388 A.2d 693

**COMMONWEALTH of Pennsylvania**

v.

**Herman FULLER, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 10, 1978.

Decided July 14, 1978.

354

Abner H. Silver, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty., for Law, Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Herman Fuller, was arrested on May 3, 1974, in connection with the March 14, 1974, shooting death of Kenneth Bullard. Appellant was brought to trial before a judge and jury on January 22, 1975, charged with murder, conspir-

acy, possessing instruments of crime, and firearms violations. Appellant was found guilty of murder in the first degree and conspiracy. Post-verdict motions were denied, and sentence of life imprisonment was imposed for the murder conviction and a concurrent one to two year prison term was imposed for the conspiracy conviction. This appeal from the homicide conviction followed. No appeal was taken from the judgment of sentence imposed on the conspiracy conviction.

In this appeal, appellant raises several allegations of trial error in support of his contention that a new trial is required. Because we agree that one of these issues has merit and mandates that appellant be retried, we need not now address the other issues raised.

The prosecution's evidence at trial established that at about 10:30 a. m., on March 14, 1974, appellant and another man rang the doorbell of the victim Bullard's apartment. The victim's mother, Victoria Bullard, went to the doorway of her and her son's second-floor apartment and spoke to appellant and his companion who were standing at the foot of the stairway leading to the second floor. They asked if Kenneth Bullard was at home and, because she had seen appellant several times before in her son's company, Victoria Bullard told her son that "friends" were there to see him. Appellant and his companion refused an invitation to come up to the apartment, and accordingly, Kenneth Bullard went down the stairway to meet them. Almost immediately after Kenneth Bullard descended the stairway, appellant and his companion shot Bullard in the back as he attempted to flee up the stairs. Bullard was struck by two bullets, one fired from appellant's gun, and one fired from the gun of appellant's companion. Appellant and his companion then fled the scene. Kenneth Bullard died less than one hour later from extensive internal bleeding caused by the gunshot wounds.

The defense presented evidence of an alibi at trial, contending that appellant was working at the time of the slaying, and further contending that Victoria Bullard's identification of appellant was erroneous.

In order to bolster its proof that appellant was one of Kenneth Bullard's slayers, the prosecution called as a witness one Minnie Harley. Harley testified that she knew appellant; that she was walking home from a local barroom with appellant on March 16, 1974, two days after the Bullard homicide; and that appellant had a pistol in his possession on that date. Over defense objection, Harley also testified that appellant struck her with the pistol and threatened to shoot her with it. She also testified that when the police arrived at the street corner where appellant allegedly struck her with the pistol, appellant tossed the gun into a nearby vacant lot. The pistol was retrieved by police, however, and ballistics tests established that it had fired one of the bullets that killed Kenneth Bullard.

At the commencement of Harley's testimony for the prosecution's case in chief, appellant's trial counsel objected and the following transpired in the trial judge's chambers, out of the hearing of the jury.

"[ASS'T. DIST. ATTORNEY]: I think counsel is aware of what this witness will prove. This witness was with the defendant when he attempted to rape her. She will not mention that. He hit her with a gun and threatened her with that gun. The police came. That gun was recovered. That gun was the murder weapon, one of the two murder weapons.

[DEFENSE COUNSEL]: Now, my objection would be to any mention of her being struck by the defendant with that gun. I think it interjects a separate and unconnected and unrelated criminal offense. . . ."

. . . . .

"I think that there is no question that this woman can take the stand and testify that she saw a gun and perhaps even identify the gun. But any mention of what this man did with that gun on that occasion, I would feel is objectionable and just too prejudicial in a homicide case."

Appellant's trial counsel again objected, but was overruled, and the witness was then permitted to testify as outlined above.

Appellant now argues, as he did in post-verdict motions, that it was reversible error for the trial court to permit the prosecution to introduce such evidence of independent criminal activity allegedly engaged in by appellant. The prosecution counters that the testimony regarding appellant's assault and battery of the witness two days after the Bullard slaying was admissible because it tended to establish appellant's identity as one of Bullard's killers.

■ It is well settled in Pennsylvania that evidence of criminal activity not charged in the indictment or information on which the defendant is being tried cannot be introduced at trial except in certain limited circumstances. *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Foose*, 441 Pa. 173; 272 A.2d 452 (1971); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). The rationale behind this rule is that ". . . the fact of the commission of one offense is not proof of the commission of another." *Id.* 382 Pa. at 84, 114 A.2d at 336. When irrelevant to the crimes being charged, evidence of participation in other criminal activity ". . . is so prejudicial that it strips the defendant of the presumption of innocence." *Commonwealth v. Roman, supra*, 465 Pa. at 523, 351 A.2d at 218.

Nevertheless, we have recognized certain "special circumstances," the presence of which will justify the introduction of such evidence of other criminal activity.

". . . is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that

the accused is the person who committed the other."
*Commonwealth v. Wable,* 382 Pa. at 84, 114 A.2d at
336–337.

■ The precise issue to which we must address ourselves,
is, whether the armed assault and battery against the wit-
ness Harley was so related to the murder of Kenneth
Bullard that proof of the one tends to prove the other. To
state the question is to answer it; the *criminal activity*
engaged in by appellant on March 16, 1974 (the assault and
battery) was in no way related to the homicide for which he
was on trial. What was relevant to the homicide was
appellant's possession of one of the guns used to kill Ken-
neth Bullard. That evidence, relevant—in fact vital—to the
prosecution's case, should have been presented to the jury
without also informing the jury of the assault and battery.

In *Commonwealth v. Foose, supra,* 441 Pa. 173, 272 A.2d
452 (1971), we addressed an issue analogous to that present-
ed here. The facts behind the crimes charged in *Foose* were
summarized by the court as follows:

"On February 3, 1965, a robbery perpetrated by two
persons occurred in a Philadelphia tavern during the
course of which a Texaco credit card was taken from John
Shinners, a patron. Six days later, two men entered a
service station in Abington, Pennsylvania, at which time
one of the men, later identified by the station attendant
as the appellant, presented an unidentified Texaco credit
card. The two men then proceeded to rob the gas station.
Shortly, thereafter, appellant and another man were ar-
rested and a search of appellant uncovered Shinners'
Texaco credit card.

The present appeal relates to the trial with respect to
the tavern robbery. At the trial, not only was the service
station attendant permitted to testify concerning the pre-
sentation of a Texaco card but also the subsequent armed
robbery of the service station. Appellant contends that
the admission of this additional testimony, over objection,
provides grounds for relief." 441 Pa. at 175, 272 A.2d at
452–53.

The *Foose* court agreed with appellant, reversed the judgment of sentence and, awarded a new trial, saying,

" 'The only relevant factor [in the "tavern" prosecution] is that of the possession itself. Accordingly, any reference to collateral circumstances unrelated to the possession itself are unnecessary and should be inadmissible. Certainly, the service station attendant could have testified to the presentation of the credit card alone.' 216 Pa.Super. at 212, 263 A.2d at 781. For these reasons we share the view of the dissenting judge that the admission of this additional testimony was improper and highly prejudicial." *Id.* 441 Pa. at 176–77, 272 A.2d at 453.

In the instant case, the prosecution could have established appellant's possession, on March 16, 1974, of the weapon used to kill Kenneth Bullard on March 14, 1974, without also informing the jury of the March 16 assault and battery. Following the in-chambers colloquy between the prosecuting attorney, defense counsel, and the court quoted previously in this opinion, the witness Harley testified as follows:

"[BY THE ASSISTANT DISTRICT ATTORNEY]:

Q. Miss Harley, on the morning of the 16th of March, 1974, you indicated that you were in the defendant's company?

A. Yes.

Q. Did he have anything unusual with him at that time?

A. Yes, he did.

[DEFENSE COUNSEL]: Objection; leading.

[THE COURT]: Overruled.

[BY THE ASSISTANT DISTRICT ATTORNEY]:

Q. What was that?

A. It was a pistol he had.

Q. When was the first time you saw the pistol?

A. That same night.

Q. Where were you at the time you first saw it?

A. Was on the corner of Cadwalader Street and at a vacant lot.

Q. How close were you to that pistol?

A.  I was very close to him.  He was standing right in front of me, beside me.

Q.  When you say 'a vacant lot,' what did the place look like?

A.  It was a condemned house;  didn't have any walls to it.

Q.  What happened with the gun?

A.  Well, he hit me with the gun on my left side.

[DEFENSE COUNSEL]: Objection, your Honor.  Objection, your Honor.

[THE COURT]: Overruled.

[BY THE ASSISTANT DISTRICT ATTORNEY]:

Q.  You may continue.

A.  He hit me with the gun on my left side, twice on my head and he told me if I didn't go with him he was going to shoot me with it.

Q.  Did anyone else arrive at that time?

A.  The police came up just after he had said that.

Q.  What, if anything, was done with the gun?

A.  He had threw the gun away in a lot not too far from me before they came up.

Q.  What, if anything, did you do in relation to the police?

A.  I told the police that he had a pistol and he threw it away.

Q.  What did the officer do?

A.  The officer asked me 'Where did he throw it?'  And I told him, 'Well, it was over to my left some place.'  And he went to flash his light and looked for it and when he found it, he asked me, 'Was this the pistol that he have?' (sic) And I said, 'Yeah.'

Q.  Where were you taken after that?

A.  I was—I was—they had took me down to the—well, I call it the Roundhouse—to question me.  And then, after that, they took me to the hospital."

The trial court should have instructed the district attorney and the witness out of the jury's presence that the witness was to testify *only* as to appellant's possession and disposi-

tion of the gun. Clearly the assistant district attorney was in a position to instruct the witness as to the scope of the testimony she was to give to the jury. Indeed, the assistant district attorney had already instructed the witness to tell the jury anything regarding the allegation that appellant had attempted to rape her. This witness' testimony regarding appellant's possession and disposition of the gun, combined with the testimony of the police officer who retrieved the weapon, stating that he found it at the precise spot at which Harley said appellant threw it, the prosecution could have established all that was necessary to link appellant to the murder weapon. In this way the interests of both the prosecution and the defense could have been protected.

Judgment of sentence reversed and a new trial granted.

LARSEN, J., dissents.