497 A.2d 1375

**COMMONWEALTH of Pennsylvania**

v.

**Richard PACELL, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1985.

Filed Sept. 13, 1985.

204

Thomas J. Turner, III, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and JOHNSON and SHOYER *, JJ.

JOHNSON, Judge:

Following a jury trial Appellant, Richard Pacell, was convicted of first-degree murder and possessing instruments of crime generally. On March 20, 1984, the Honorable George J. Ivins of the Court of Common Pleas of Philadelphia County sentenced Appellant to life imprisonment for first-degree murder and a concurrent sentence of not less than one nor more than two years for possessing instruments of crime generally.

---

* Judge SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

On appeal from the Judgment of Sentence Appellant raises the following issues:

I. REVERSIBLE ERROR WAS COMMITTED WHEN THE PROSECUTOR WAS ALLOWED TO QUESTION THE APPELLANT, OVER OBJECTIONS OF TRIAL COUNSEL, AS TO PRIOR CRIMINAL ACTIVITY AND, IN PARTICULAR, THE ASSAULT ON DEBBIE BIRK-MIRE.

II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR A MISTRIAL WHEN THE PROSECUTOR IN HIS CLOSING AD-DRESS WAS GUILTY OF PROSECUTORIAL MISCON-DUCT IN CALLING THE DEFENDANT A LIAR.

III. REVERSIBLE ERROR WAS COMMITTED WHEN THE TRIAL COURT CONTINUALLY ALLOWED THE PROSECUTING ATTORNEY TO LEAD WITNESSES AND THEN REPEAT THE WITNESSES' TESTIMONY AFTER THEIR ANSWERS, OVER THE OBJECTIONS OF TRIAL COUNSEL.

IV. ERROR WAS COMMITTED WHEN THE JURY FOUND THE DEFENDANT GUILTY OF FIRST DE-GREE MURDER DESPITE THE FACT THAT THE EVI-DENCE PRESENTED WOULD NOT ALLOW A DE-TERMINATION OF GUILT BEYOND A REASONABLE DOUBT.

After careful review of the record, we believe Judge Ivins' Opinion filed March 6, 1984 adequately addresses Issues II and III and with respect to these issues raised by Appellant on appeal, we affirm on the basis of the trial court's opinion.

Appellant in Issue I argues that the trial court erred in admitting Appellant's testimony, on cross-examination, that he hit his common-law wife, Debbie Birkmire, during an argument that took place five days before the murder. See N.T., 6/2/83 at 68–75. The trial court correctly concluded that this testimony did not refer to "prior criminal activity", since Appellant was never arrested, indicted, or convicted for it. Opinion, 3/6/84 at 5. The court

went on to state, that with this conclusion, "(t)he issue then becomes whether [the testimony] was relevant for impeachment purposes." *Id.* In fact, that was *not* the issue, or to put it differently, if it *were* the issue, the answer was that the testimony was *not* relevant for impeachment purposes. The testimony was evidence of prior misconduct, or a prior "bad act", *see* McCormick, *Handbook on Evidence,* § 42 (3rd ed. 1984), and "Pennsylvania case law has long held that a witness may not be impeached by evidence of criminal activity for which the witness has not been convicted." *Commonwealth v. Cragle,* 281 Pa.Super. 434, 436–37, 422 A.2d 547 (1980) (collecting cases). *See also Commonwealth v. McGuire,* 302 Pa.Super. 226, 231–32, 448 A.2d 609, 612 (1982). Nevertheless, the testimony was admissible, albeit for a purpose other than to impeach Appellant.[1]

While evidence either of a prior bad act or crime is inadmissible if offered to prove the defendant's bad character, *see Commonwealth v. Zettlemoyer,* 500 Pa. 16, 50, 454 A.2d 937, 955 (1982), *cert. denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 *reh. denied* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983); *Commonwealth v. Styles,* 494 Pa. 524, 527, 431 A.2d 978, 980 (1981), such evidence may be admissible for other evidentiary purposes if its probative value outweighs its tendency to prejudice the jury. *See Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981). *See also* McCormick, *Handbook on Evidence, supra* at § 190. Such other evidentiary purposes include establishing the defendant's motive or that the defendant "acted with malice, deliberation, or the requisite specific intent." *Id.* at 558, 562–63.

The Commonwealth's theory in this case was that the relationship between Appellant and Birkmire was rapidly deteriorating, primarily because Appellant suspected she was having an affair with the victim; that five days before the murder, Appellant and Birkmire argued violently about

---

1. We may affirm a correct decision of the trial court on any basis. *See Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 359, 437 A.2d 417, 424 (1981).

the affair; that, as a consequence, one or two days after the argument Appellant purchased a knife; and that two or three days after purchasing the knife Appellant trapped Birkmire with her lover and murdered him with the knife. N.T., 6/6/83 at 44–49. During the course of cross-examining Appellant regarding the purchase of the knife, the assistant district attorney asked twelve questions regarding Appellant's argument with Birkmire. The questions were all variations on the following theme:

Q. I'd like to know why did you hit her? Why did you find it necessary to hit an 18-year-old girl in the face?

N.T., 6/2/83 at 72–73.

This evidence was relevant, if at all, to show the depth of the estrangement between Appellant and Birkmire. One might argue that Birkmire's age, or the fact that she was struck in the face, had no relevance to this issue, and that the purpose of the questions was the impermissible one of showing Appellant's propensity for violence. Appellant did, in fact, object that the Commonwealth's questions were irrelevant. N.T., 6/2/83 at 70. *Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978), might appear to support this position. There, the trial court allowed a witness to testify that she had seen the defendant with the murder weapon, a gun, two days after the murder, when he had hit her with it. Although she was not permitted to testify that the defendant had also attempted to rape her, the supreme court nevertheless reversed and granted a new trial, holding that the testimony was relevant only to the issue of the defendant's possession of the gun, and that the trial court should therefore have prevented the jury from hearing evidence about the defendant's use of the gun to hit the witness. *Id.*, 479 Pa. at 358, 388 A.2d at 695.

On balance, however, we believe that the evidence here was relevant to Appellant's motive, and that because it was part of the sequence of events leading directly to the homicide, this relevance was not vitiated by remoteness. (In fairness to the trial court, it should be noted that despite

its characterization of the issue as being whether the evidence was "relevant for impeachment purposes", Opinion, 3/6/84 at 5, it went on to say that the evidence "was offered to show intent, motive, and a continual course of conduct[ ]" and that on that ground it was "relevant and properly admitted", *id.* at 6. We agree with that conclusion.)

Unlike the situation in *Fuller,* Appellant's argument with Birkmire took place *before* the murder. It was, therefore, directly relevant to the Commonwealth's theory of motive for, as the Commonwealth argued, it tended to show escalating anger and jealousy, of "an intensity of feeling, enough to make somebody act...." N.T., 6/6/83 at 45. It is true that Appellant's argument with Birkmire took place five days before the murder, but that was not so long a period as to vitiate its relevance to Appellant's state of mind at the time of the killing. The jury could find that the ill-will generated by the argument continued throughout the five-day period and led directly to the purchase of the murder weapon and the conception and execution of the murder plan. N.T., 6/6/83 at 45–47. *See Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978) (evidence that the victim had hit appellant with a chair thirteen days before murder held admissible under motive exception); *Commonwealth v. Glover,* 446 Pa. 492, 496, 286 A.2d 349, 351 (1972) (evidence that two to three weeks before defendant murdered man found in former girlfriend's apartment, defendant had broken into apartment and assaulted another man found there; held, relevant to motive and not too remote to be relevant to state of mind at time of murder.)

*Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970), presents a situation analogous to the case at bar. In *Faison,* the defendant killed a friend of his estranged girlfriend, believing that the victim was helping the girlfriend elude him. She testified that the defendant had raped and threatened to kill her and her children if she left him. The Commonwealth argued that the evidence of the

threats and rape was relevant to establish the defendant's settled malice to his girlfriend, and that this malice provided the motive for the murder of her friend. Upholding the admission of the evidence, the supreme court stated that "evidence of prior occurrences (*e.g.*, previous threats) and prior offenses, if they are related to the offense for which defendant is on trial, may be admitted to show malice, motive, or intent." *Id.*, 437 Pa. at 446, 264 A.2d at 401. We believe the same may be said here.

With respect to Issue IV, Appellant in his brief appears to argue that each of the elements for first degree murder was not established beyond a reasonable doubt, but he does not specifically state which of the elements was not proven.

Appellant does concede that "[t]here is evidence that the defendant intentionally killed the deceased." Appellant's brief at 14. His brief suggests that the unchallenged evidence shows "that there was a struggle, that passion was involved, [and] that defendant tried to aid the deceased after the stabbing." *Id.* These factors, however, are not inconsistent with the jury's verdict of first-degree murder.

18 Pa.C.S. § 2502(a) defines Murder of the first degree in the following manner:

A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

Since it is conceded by Appellant that the killing was intentional, we must conclude that murder of the first degree was proven beyond a reasonable doubt.

 Sufficient evidence exists on the record to support the jury's verdict. While there may be unrebutted testimony which, if believed by the jury, could have raised a reasonable doubt, it is the function of the jury and not the trial judge to decide issues of credibility and reasonable doubt. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984).

Judgment of sentence affirmed.