501 A.2d 675

COMMONWEALTH of Pennsylvania

v.

George HART, Appellant.

COMMONWEALTH of Pennsylvania

v.

Ann ROBINSON, Appellant

Superior Court of Pennsylvania.

Submitted Oct. 23, 1985.

Filed Dec. 6, 1985.

Daniel H. Greene, Philadelphia, for appellants.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Com., appellee.

Before ROWLEY, HESTER and LIPEZ, JJ.

HESTER, Judge:

George Hart and Ann Robinson both appeal a five to ten-year sentence for third degree murder and related offenses arising from the merciless abuse of two of their children which resulted in the death of a three-year-old daughter, Misty, and serious injuries to a two-year-old son, Leif. Appellants raise three issues challenging the sufficiency of the evidence. We hold that there is sufficient evidence to support the convictions and affirm the judgments of sentence.[1]

On January 5, 1983, in response to a call, Philadelphia police arrived at appellants' residence where Hart was holding his daughter, Misty Hart, in his arms. The three-year-old child appeared to have been beaten; her face was bruised and swollen. Hart told the officers that Misty had fallen from her crib and that he had beaten her because she would not eat and was "bad." The police took Hart and the child to the hospital, while his common-law wife, Robinson, remained at home with the couple's four other children.

At the hospital, doctors considered Misty to be in critical condition. She was transferred to a children's hospital for surgery, but died within hours. Her father was taken into custody at the hospital and transported to the police station. En route, Hart told the officers that he had beaten the baby to make her eat.

While in custody, Hart gave two statements to homicide detectives which were introduced at appellants' bench trial. He admitted having beaten his daughter repeatedly during the preceding week because she had a cold and would not eat. He hit the child with a belt, and spanked her on the legs, arms, buttocks and back. He also slapped her numerous times in the face with sufficient force to knock her down. He denied that anyone other than he and his wife had beaten Misty and stated that both "smacked her in the

---

1. Although appellants docketed two separate appeals, they were tried as codefendants, their cases involve a common set of facts, and their arguments on appeal are identical. We have therefore consolidated the appeals for disposition in this Opinion.

face." Hart claimed that Misty had fallen several times from her bed the night before her death, so he put her in a crib from which she had again fallen.

Robinson was tried as Hart's codefendant. On the day of Misty's death, Robinson had given a written statement to police which was also introduced in evidence. She denied knowing how Misty suffered her head wound, although she had earlier told the police that she, rather than Hart, had beaten Misty. Robinson acknowledged beating Misty repeatedly during the six months prior to her death with a belt, a shoe and a paddle. She admitted seeing marks on the child as a result of the beatings. She also admitted beating Leif with a belt, a shoe and a paddle.

In appellants' residence, detectives found a crib and several beds formed of milk crates. There was virtually no other furniture in the apartment, nor was there any food. An officer found appellants' two-year-old son, Leif, in bed. His legs and feet were swollen and inflamed, his stomach distended, his ribs protruding. There was a lump on his head, a scar over his right eye, a burn scar on his right knee, whip marks, a belt buckle scar on his back, and what appeared to be cigarette burns below his stomach. The officer testified, "His whole body was full of old scars."

Leif was taken to the hospital, where he was admitted for treatment. On the following day, Leif still could not stand; he had to be held at all times. Photographs taken the day after his admission depicted burn marks on his lower abdomen, black and blue bruises on his buttocks and back, a burn scar on his right knee, and a scar over his right eye. Leif had scars and bruises over his entire body: arms, legs, back and stomach.

Medical examiner Robert L. Catherman, M.D., performed a postmortem examination of Misty Hart's body on the day after her death. He testified that, in addition to old scars all over her body, there were fourteen recent external injuries. His internal examination disclosed a fractured skull, a bruise over the right side and back of the head, a

subdural hematoma, and extensive diffuse bleeding into the soft tissue and muscles of the buttocks and thighs.

The doctor concluded that the internal injuries to the buttocks and thighs as well as the fourteen external injuries were all blunt-force injuries. The head injuries indicated a substantial blunt force over the back of the head consistent with the moving head striking a fixed object, rather than a moving object striking the head in a stationary position. He expressed these conclusions with "reasonable medical certainty."

The doctor then expressed his opinion, to "a reasonable degree of medical certainty," that death resulted from "multiple injuries of the head, trunk, and limbs." Finally, he expressed his opinion, with the same level of certainty, that the manner of death was homicide.

During cross-examination, he stated that the head injuries *could have* been caused by a fall from the height of Misty's crib, but repeatedly expressed his opinion that the injuries did not occur in that fashion. He based his opinion on his training and on substantial experience in examining similar injuries. He also conceded that the head injuries were the primary cause of death and without those injuries, the child probably would not have died, though the injuries to the buttocks and thighs contributed to the death.

The trial judge explicitly resolved all matters pertaining to the credibility of witnesses, and the weight to be given their testimony, in favor of the Commonwealth. Slip opinion, 7/28/85, 10; slip opinion 8/2/85, 11. Based on the foregoing evidence, he found appellants guilty of murder in the third degree, aggravated assault, criminal conspiracy, two counts of endangering the welfare of children, and recklessly endangering another person.

On July 10, 1984, the court heard and denied post-verdict motions and sentenced each appellant to five to ten years confinement for murder in the third degree; seven years probation for criminal conspiracy, consecutive to the murder sentence; and shorter concurrent sentences for the remain-

ing crimes. The sentence of each appellant for recklessly endangering another person was merged with that for aggravated assault.

Appellants argue that the evidence was insufficient to establish beyond a reasonable doubt, first, that Misty Hart's death was the result of a criminal act; second, that they were guilty of aggravated assault involving their son Leif; and third, that appellants were guilty of criminal conspiracy.

■ "When sufficiency of the evidence claims are raised, an appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction." *Commonwealth v. Madison*, 501 Pa. 485, 490, 462 A.2d 228, 231 (1983); *see also Commonwealth v. Gordon*, 329 Pa.Super. 42, 52, 477 A.2d 1342, 1347 (1984). While a conviction may not be based on suspicion or surmise, the Commonwealth need not establish guilt to a mathematical certainty and may rely wholly on circumstantial evidence. *Id.; Commonwealth v. Madison*, 263 Pa.Super. 206, 209–10, 397 A.2d 818, 820 (1979). In light of these standards, we hold the evidence sufficient to support all of appellants' convictions.

■ Appellants' challenge to their convictions of murder is an attack on the testimony of the medical examiner. Doctor Catherman was unable to state the cause and manner of Misty's death with absolute certainty, but he repeatedly stated that he held his opinion with "a reasonable degree of medical certainty." Notwithstanding appellants' argument, the doctor's testimony established far more than a *probability* that Misty's death was caused by a criminal act.

In a similar case, the supreme court stated:

In this jurisdiction we have held that where an adult is given sole custody of a child of tender years for a period of time, and, during that time the child sustains injuries

which may have been caused by a criminal agency, the finder of fact may examine any explanation offered and, if they find that explanation to be wanting, they may reject it and find the person having custody of the child responsible for the wounds. *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973).

*Commonwealth v. Meredith*, 490 Pa. 303, 306, 416 A.2d 481, 482–83 (1980). In *Commonwealth v. Turner*, 491 Pa. 620, 421 A.2d 1057 (1980), the accused admitted having beaten the two-year-old victim but denied inflicting the head injuries which caused death. While the medical examiner "acknowledged the *remote* possibility that *a* contusion to the child's head *could* have been caused by a fall, he discounted that possibility." *Id.*, 491 Pa. at 624, 421 A.2d at 1059 (emphasis in original). The court concluded that "[t]he reasonable inferences arising from the evidence overwhelmingly negate the possibility of accidental head injuries." *Id.* The same is true of the evidence in appellants' trial; we hold it sufficient to prove beyond a reasonable doubt that Misty's death was not accidental.

■ Appellants' second argument is that Leif's injuries amounted only to simple assault, not to aggravated assault. This argument is frivolous. A person is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; ..." 18 Pa.C.S. § 2702(a)(1). The evidence of the brutal injuries inflicted on two-year-old Leif is more than sufficient to prove the offense of aggravated assault. *See Commonwealth v. Moore*, 261 Pa.Super. 92, 395 A.2d 1328 (1978).

Finally, appellants argue that there was insufficient evidence to show that a conspiracy to commit murder existed. Their position is that there was no proof of an agreement between them to commit murder.

The illicit agreement needed to establish a conspiracy "may be inferred from the evidence of the circumstances surrounding the allegedly conspiratorial activities, and from

the relationship between and the conduct of the parties...." *Commonwealth v. Gordon,* 329 Pa.Super. 42, 52, 477 A.2d 1342, 1347 (1984) (citations omitted). It is well settled that an agreement need not be proven explicitly; circumstantial evidence alone will support a conspiracy conviction. "The agreement required for conspiracy can seldom be directly proved, nor need it be. A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the confederacy which demonstrates a unity of purpose to accomplish an unlawful act." *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 190–91, 475 A.2d 744, 750 (1984) (citations omitted). *See also Commonwealth v. Kennedy,* 499 Pa. 389, 395, 453 A.2d 927, 929–30 (1982).

■ In this case, appellants were jointly responsible for the care of Misty. Both admitted beating their child regularly, and each was aware that the other did so. These beatings finally caused Misty's death. From the relationship between appellants, their pattern of conduct and the circumstances of the child's death, the trial judge properly concluded that appellants were united in killing Misty.

The judgments of sentence are affirmed.