502 A.2d 1383

**COMMONWEALTH of Pennsylvania**

v.

**Subramanyam VEDAM, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed Dec. 27, 1985.

John R. Carroll, Philadelphia, for appellant.

Ray Gricar, Assistant District Attorney, Bellefonte, for Com., appellee.

Before SPAETH, P.J., and CIRILLO and SHOYER*, JJ.

SPAETH, President Judge:

This appeal is from a judgment of sentence for first-degree murder. Appellant assigns some nine trial errors, but we need address only two: 1) whether the evidence presented was sufficient to sustain the jury's verdict; and 2) whether the trial court committed reversible error by admitting evidence of appellant's prior misconduct. We have concluded that the evidence was sufficient, but we agree with appellant that the trial court committed reversible error in admitting evidence of appellant's prior misconduct. We therefore vacate the judgment of sentence and remand for a new trial.

–1–

The evidence implicating appellant in the death of Thomas Kinser was entirely circumstantial. Nevertheless, circumstantial evidence may satisfactorily prove any or all of the elements of a crime beyond a reasonable doubt. *Commonwealth v. Crowson*, 488 Pa. 537, 412 A.2d 1363 (1979). Our task is to review the evidence in the light most favorable to the Commonwealth, "accept[ing] as true all evidence and all reasonable inferences upon which, if believed, the factfinder could have properly based its verdict...." *Id.*, 488 Pa. at 540, 412 A.2d at 1364.

The Commonwealth established at trial that appellant was the last known person to see Thomas Kinser alive. On December 14, 1980, Kinser borrowed a van from his family to drive appellant, who was his friend and former roommate, to nearby Lewistown. According to Kinser's mother, appellant had requested this favor a few days earlier. The van was found early the next morning in the parking lot of

---

* The Honorable Kendall H. SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, is sitting by designation.

the apartment building where Kinser lived, but Kinser had disappeared.

When questioned by Kinser's girlfriend and family, appellant gave conflicting explanations of the disappearance. He told Kinser's girlfriend that Kinser had left him at approximately five o'clock, after they had returned from Lewistown, and that he had paid Kinser in drugs for the trip. He suggested to Kinser's mother that Kinser might have traveled south because of the cold weather. When Mrs. Kinser asked appellant whether her son had money with him, appellant said that he did not know of any. A short time later, however, appellant telephoned Mrs. Kinser to assure her that Kinser was carrying about two hundred dollars. When Kinser's father asked appellant to discuss the stories about the drugs and the two hundred dollars, appellant refused.

Almost a year later, on September 27, 1981, a decomposed body partially covered with logs and debris was discovered by teenagers in a wooded area. The remains were identified through dental charts as those of Thomas Kinser. An autopsy revealed a single bullet hole through the top of the skull. According to medical testimony, death could have occurred any time between December 1980 and April 1981.

A bullet from a .25 caliber handgun was found with Kinser's remains. Using a metal detector, police also uncovered a .25 caliber shell casing in the immediate area. This shell casing was linked to a gun purchased by appellant about a week before Kinser's disappearance. Appellant had test-fired the .25 caliber weapon before buying it. The seller was able to show police where the test-firing had occurred, and another .25 caliber bullet and another shell casing were recovered from that site. A ballistics expert testified that the two casings—the casing found in the immediate area of Kinser's body and the casing found at the test-firing site—were fired from the same gun. These casings were also of the same vintage as the gun and ammunition sold to appellant. The bullet found with the body could not be compared with the bullet found at the

test-firing site because of the deterioration of the bullet found with the body. No gun was ever produced at trial.

The Commonwealth also presented evidence of a motive for the murder. In May 1980 appellant stole a fourteen pound synthetic ruby from a display case in the Materials Research Laboratory at Pennsylvania State University. The ruby was valued at between two and three hundred dollars but one witness testified that appellant told him it was worth one or two million dollars. Appellant hid the ruby in the woods, where it was later found, sometime that fall, by a woodcutter, who took it home with him. Thomas Kinser had seen the ruby and during the summer spoke of it admiringly to his mother. Also, Kinser was familiar with the area where the ruby was hidden. Coupled with this evidence was testimony suggesting that appellant was the sort of person who would lure someone who had betrayed him into the woods and shoot him.

■ The preceding evidence was sufficient to convict appellant of murder in the first degree. Appellant's opportunity to kill Kinser was shown. Kinser was last known alive in the company of appellant. Moreover, appellant's subsequent accounts of their day together were suspicious. From the autopsy and ballistics testimony, the jury could have found that a bullet fired from appellant's .25 caliber gun was the cause of death. The jury also could have found that appellant had fired the gun, because it was his gun, and had done so with intent to kill Kinser, the intent being inferred from the evidence of the bullet hole in the skull. *See Commonwealth v. Crowson, supra.* Further evidence of intent was the evidence of the purchase of the gun. The evidence regarding appellant's prior theft of the ruby, and the evidence suggesting that appellant would deal with someone who betrayed him by luring him into the woods and shooting him, further supported the Commonwealth's case, for it tended to prove both motive and disposition.

–2–

■ In considering the admissibility of the evidence regarding the ruby and luring someone into the woods, we may start with the general rule that evidence of prior offenses is generally inadmissible in a criminal trial because " '[t]he presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectively strip him of the presumption of innocence' ", but it nevertheless may be admissible to show "(1) motive, (2) intent, (3) a common scheme or plan involving the commission of two or more crimes so closely related that proof of one tends to prove the other, (4) the identity of the accused as the perpetrator, (5) [absence of] accident or (6) lack of mistake." *Commonwealth v. Styles,* 494 Pa. 524, 527–28, 431 A.2d 978, 980 (1981) (quoting *Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048 (1978)).

The Commonwealth argues that the evidence of appellant's prior theft of the ruby falls within the exception for motive, and also within the "same transaction" exception articulated in *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975), because the theft " 'formed part of a chain, or was one of a sequence of acts, or became part of the natural development of the facts.' " *Id.,* 462 Pa. at 591, 342 A.2d at 90 (quoting *Commonwealth v. Williams,* 307 Pa. 134, 160 A. 602 (1932)). The Commonwealth further argues that the probative value of the evidence outweighed any prejudice to appellant.

■ We are not persuaded by this reasoning. Its premise, as acknowledged by the Commonwealth, is that appellant "had reason to believe that Kinser had stolen the ruby from its hiding place." Brief for Commonwealth at 25. This premise, however, is not supported by the evidence. There is no evidence—and the Commonwealth does not claim otherwise—that Kinser did in fact steal the ruby. While it is true that Kinser knew of the campsite in the woods where appellant hid the ruby, there is no evidence that he knew that appellant had hidden the ruby there, much less that he knew the exact hiding place. Moreover,

others knew of the campsite. As one of the Common-wealth's witnesses testified on cross examination:

Q. And you're familiar that other people went up to that spot as well, aren't you?

A. Yeah, it's pretty popular.

Q. It's known to a lot of people?

A. Yeah.

R.R. 3504a.

It is apparent, therefore, that any of many people might have found the ruby and taken it from its hiding place—just as, later, a woodcutter found it at the campsite. Of course, if appellant believed that Kinser had stolen the ruby, it would not matter whether in fact Kinser had stolen it; appellant's belief that he had might be sufficient reason for appellant to want to kill him. The evidence, however, fails to show that appellant did believe that Kinser had stolen the ruby. There is no evidence, for example, that appellant ever said anything suggesting such a belief. It is true that Kinser was shown the ruby. Mrs. Kinser testified that her son had told her "[t]his kid" had shown him the ruby, without naming the "kid"; she further testified that "[this] indicated to me that it was not somebody I knew" (she knew appellant). R.R. 3499a–3500a. Even so, the jury might have inferred that it was appellant who showed Kinser the ruby, but that inference could not support the further inference that because appellant had shown Kinser the ruby he believed Kinser was responsible for its later disappear-ance. Such a further inference might be warranted if Kinser were the only person to whom appellant had shown the ruby, but the evidence is that he was not. Thus, Charles Thomas testified that in May 1980 appellant came to his apartment and showed him the ruby, and asked whether he would help sell it. R.R. 3512a–20a. Moreover, given that appellant showed the ruby to appellant and Thomas, it follows that he may have shown it to still others.

We therefore conclude that the evidence of appellant's prior theft of the ruby was, if relevant, so marginally relevant that its admission was error. We need not decide

whether this error would by itself require a new trial, for the evidence of the prior theft was not offered, and admitted, by itself but as one piece of an evidentiary pattern. This is explained by the Commonwealth in its argument:

In other words, if as the evidence would indicate, appellant had reason to believe that Kinser had stolen the ruby from its hiding place, what might appellant do in response? For the answer to that question, one must look at the testimony of Michael Shoemaker, Seth Rosenberg and Michael Latta. Their testimony shows the history of a peculiar plan contemplated by appellant, from its origin to its possible application to real situations in the life of appellant.

Brief for Commonwealth at 25–26.

Initially, we note that the fallacy in this argument is that the evidence does *not* prompt the question, "what might appellant do in response?", for as we have just discussed, it does *not* "indicate [that] appellant had reason to believe that Kinser had stolen the ruby...." We do not, however, rest our decision on this point. Instead, as the Commonwealth urges, we shall look at the testimony of Shoemaker, Rosenberg, and Latta so that we may decide whether it shows, as the Commonwealth asserts, "the history of a peculiar plan", which was eventually carried out by appellant's killing Kinser.

The first of these three witnesses to testify was Rosenberg. He testified that in May 1980 appellant told him that "he had planned to take [Charles Thomas] out into the woods and shoot him and dump his body." R.R. 3413a.[1] The second witness was Latta. He testified that in the summer of 1980 he had agreed to receive a package that appellant planned to send from India. When the package

1. Rosenberg also testified that appellant had indicated displeasure with him in a letter of September 1980 because certain actions of Rosenberg apparently had caused appellant to live with Kinser longer than he had planned. Rosenberg testified, however, that the letter did not directly express any animosity on the part of appellant toward Kinser. This testimony was the only evidence presented by the Commonwealth concerning appellant's feelings about Kinser.

never arrived, he said, he asked appellant whether "he [felt] that I had ripped him off.... He assured me that he didn't think that I had ripped him off; that if he had thought that I had ripped him off, he wouldn't have been talking with me at that time. He would have just taken me out in the woods and shot me." R.R. 3604a. The last witness, Shoemaker, recounted a conversation he had had with appellant in 1978. He said that one Josh Novak "was bothering my girlfriend quite a bit" and that he had told appellant about this. R.R. 3617a–18a. When asked what he had told appellant, he answered that he had "expressed a desire to kill Mr. Novak", R.R. 3518a, and had gone on to tell appellant how he would do it:

> I would say to Josh, "Let's let bygones b[e] bygones." And go up in the hills somewhere in a secluded area since we were both underage, and become inebriated, and after that, I would stand up and go off in the woods to, you know, relieve myself, and come back, and while the person's back was turned, to murder the fellow.

> R.R. 3619a.

When asked whether appellant participated in this conversation, Shoemaker replied, "He was mostly just listening." *Id.* On cross-examination, when asked, "Did he [appellant] ever indicate that he had even heard what you said," Shoemaker replied, "No, he never really showed any indication that it affected him one way or the other." R.R. 3623a.

■ In considering this testimony, we may begin by noting that it does not present a case of appellant having *done* anything.[2] Evidence that the defendant has committed a

---

**2.** The Commonwealth suggests in its brief that because the evidence is merely of threats, "the guidelines for offering evidence of other real criminal conduct [sh]ould be relaxed in the case, such as the one at bar, wherein the evidence in question only shows that the accused once considered committing a crime." Brief for Commonwealth at 31–32. We cannot agree. Evidence of prior misconduct, whether illustrated through criminal convictions or unacted-upon threats, is never admissible to show the accused's disposition for crime; it is only admissible under the specified exceptions already indicated. *See Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. Minoff,* 363 Pa. 287, 69 A.2d 145 (1949).

distinctive prior crime may be admissible on the issue of identity, if the prior crime is "so unusual and distinctive as to be like a signature". *McCormick on Evidence* § 190 (1984). Shooting some one in the woods, especially in an area as heavily wooded as Centre County, where the murder here in question was committed, does not seem so unusual and distinctive, but putting that aside for the moment, the fact remains that the most the evidence shows is that on one occasion appellant said he had "planned" to take Thomas into the woods and shoot him, and on another, that "if he had thought" that Latta had "ripped him off", he "would have" taken him into the woods and shot him. Appellant never acted on these statements. If appellant *had* shot Thomas in the woods, then the issue would arise whether proof of that fact would be admissible to show that he had also shot Kinser in the woods; as we have indicated, admissibility would at best be doubtful, given that shooting some one in the woods is hardly a "signature" crime. Given, however, that appellant did *not* shoot Thomas in the woods, or Latta, the Commonwealth's argument becomes attenuated: since appellant planned to shoot Thomas in the woods he also planned to shoot Kinser in the woods; although he did not shoot Thomas, he did shoot Kinser. The "although" is a *non sequitur*. There is no evidence that appellant *had* a plan to shoot Kinser in the woods. Moreover, the Commonwealth's argument permits the inference that since appellant did not act on his plan to shoot Thomas in the woods, neither did he act on his plan to shoot Kinser in the woods.

Nor does Shoemaker's testimony about how he would like to kill Novak—he did not in fact kill Novak—add substance to the Commonwealth's argument. If Shoemaker had described a "signature" way of killing someone, say, the use of a particular poison, and if Kinser had been killed in that particular way, then proof of appellant's knowledge that that was a way to kill someone might be relevant to show appellant's identity as the killer. Shoemaker, however, did not describe a "signature" way of killing someone. Anyone

who decided to kill Kinser might have decided to shoot him in the woods; to prove that appellant knew that one might commit a murder by shooting the victim in the woods only proved that appellant knew what anyone else would know.

The trial court in its opinion acknowledges that the testimony of Rosenberg, Latta, and Shoemaker was not admissible as evidence of appellant's identity as the person who killed Kinser. Slip op. of tr. ct. at 27. The court states, however, that the testimony was nevertheless "properly admitted as relevant circumstantial evidence." *Id.* In support of this statement the court cites *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960), *cert. den.*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961); *Commonwealth v. Minoff*, 363 Pa. 287, 69 A.2d 145 (1949); and *Commonwealth v. Kaster*, 300 Pa.Super. 174, 446 A.2d 286 (1982). These cases, however, are inapposite.

*Kravitz* stands for the general proposition that a conviction of murder may rest on circumstantial evidence, but its facts were so different from those of this case that we may assume that the trial court cited it only for this general proposition. In *Minoff* the Supreme Court upheld the admission of testimony of threats that the defendant had made towards members of a rival church faction six months before he killed two members of this rival faction. In *Glover* the Court upheld the admission of testimony of an incident in which the defendant had harassed and threatened male friends of his former girlfriend; the defendant was convicted of killing one of his former girlfriend's friends a few weeks later. In *Kaster* this court, on a charge of attempted murder of a police chief, upheld the admission of a drawing made by the defendant, depicting the hanging of a police officer. In each of these three cases the threats were directed against a class to which the victim clearly belonged. In the present case, however, as we have discussed, the Commonwealth has not shown that appellant believed that Kinser had taken the ruby from its hiding place or had betrayed him in any way. Thus it may not be

said that Thomas, Latta, and Kinser were members of a class of betrayers, analogous to the church faction in *Minoff*, the male companions in *Glover*, or the police in *Kaster*.

We are therefore unable to uphold the trial court's admission of the evidence regarding the ruby and killing someone in the woods. The evidence was highly prejudicial, for it portrayed appellant as a thief and suggested that he was a violent man, disposed to kill people in the woods. Against this, the relevance of the evidence was at best marginal. It therefore may not be said that the prejudicial effect of the evidence was outweighed by its probative value. Nothing, in short, takes this case out of the general rule that evidence of prior offenses should not be admitted because "[t]he presumed effect . . . is to predispose the minds of the jurors to believe the accused guilty. . . ." *Commonwealth v. Styles, supra; Commonwealth v. Spruill, supra.*

Judgment of sentence vacated and case remanded for new trial.

SHOYER, J., files a concurring opinion.

CIRILLO, J., files a dissenting opinion.

SHOYER, Judge, concurring:

The evidence as to the theft of the ruby by defendant as justifying the creation of a motive was not harmless hearsay. As well stated by President Judge Spaeth in his Opinion (p. 1386):

> "... Of course, if appellant believed that Kinser had stolen the ruby, it would not matter whether in fact Kinser had stolen it; appellant's belief that he had might be sufficient reason for appellant to want to kill him. The evidence, however, fails to show that appellant did believe that Kinser had stolen the ruby. There is no evidence, for example, that appellant ever said anything suggesting such a belief. . . ."

Revenge is always accepted as a valid motive in proof of a criminal act. But you must prove either (1) that the

victim committed the alleged wrong against defendant; or (2) that the defendant suspected him of having committed the wrong. *You cannot hypothesize existence of the motive but must first prove its existence* by legally admissible evidence.

In *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), the Court said:

" '[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a "reasonable possibility" that an error "might have contributed to the conviction," the error is not harmless. *Commonwealth v. Davis,* 452 Pa. [171, 178], 305 A.2d [715, 719 (1973)], quoting *Chapman v. California,* 386 U.S. [18, 24], 87 S.Ct. [824, 828, 17 L.Ed.2d 705 (1967)].' "

As in *Commonwealth v. Story, supra,* I am not convinced that "the evidence of guilt was so overwhelming and the error of admitting the prejudicial testimony so inconsistent by comparison, that the error was harmless beyond a reasonable doubt."

I *Join* in President Judge Spaeth's remand for a new trial.

CIRILLO, Judge, dissenting:

I respectfully dissent.

It is well established that the admission or exclusion of evidence is committed to the sound discretion of the trial court. *Commonwealth v. Jackson,* 336 Pa.Super. 609, 486 A.2d 431 (1984); *Commonwealth v. Miller,* 303 Pa.Super. 504, 450 A.2d 40 (1982); *Commonwealth v. Krajci,* 283 Pa.Super. 488, 424 A.2d 914 (1981). A trial court's evidentiary ruling will not be disturbed on appeal unless the ruling amounts to an abuse of discretion. *Commonwealth v. Jackson, supra; Commonwealth v. Miller, supra; Commonwealth v. Krajci, supra.*

In the case *sub judice,* the trial judge allowed evidence of appellant's prior criminal activity and reputation in the

community to be admitted. I do not believe this evidentiary decision was an abuse of the trial court's discretion.

It is firmly established that evidence of unrelated criminal conduct of an accused is generally inadmissible to prove he committed the crimes for which he is being tried. *Commonwealth v. Styles*, 494 Pa. 524, 431 A.2d 978 (1981); *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). In *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978), the Supreme Court expounded on the rationale behind this rule:

"[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence."

*Id.*, 480 Pa. at 604–05, 391 A.2d at 1049–50, *quoting Commonwealth v. Terry*, 462 Pa. 595, 599–600, 342 A.2d 92, 94–95 (1975) and *Commonwealth v. Clark*, 453 Pa. 449, 452–53, 309 A.2d 589, 590–91 (1973). However, there are some instances when evidence of past crimes is admissible, as where it is used to prove 1) motive, 2) intent, 3) a common plan or scheme, 4) identity of accused as the perpetrator, 5) accident, 6) lack of mistake. *Commonwealth v. Brown, supra; Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972).

Pennsylvania case law also permits the admission of evidence of a crime other than the one for which the accused is on trial if it is part of a chain or sequence of events which leads up to the criminal activity for which the accused is being tried. *See Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602 (1932); *Commonwealth v. Murphy*, 346 Pa.Super. 438, 499 A.2d 1080 (1985); *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383 (1985); *Common-*

*wealth v. Nolen,* 330 Pa.Super. 366, 479 A.2d 595 (1984); *Commonwealth v. Detrie,* 263 Pa.Super. 75, 397 A.2d 2 (1979). In the case at bar the Commonwealth presented evidence of a chain of events which lead to the murder of Thomas Kinser. Viewing all of the evidence presented as a whole, I believe a showing was made that appellant had a motive for murding Kinser. *See generally Commonwealth v. Speller,* 311 Pa.Super. 569, 458 A.2d 198 (1983). It is therefore my conclusion that the evidence in question was properly admitted and the weight afforded such evidence was properly left for the jury to decide.

The majority admits that the evidence presented at trial was sufficient to convict appellant of murder in the first-degree. It was proven that appellant was the last known person to see the deceased alive and that he had the opportunity to kill Kinser. Most importantly, the shell casing found near the deceased body was linked to the gun purchased by appellant one week prior to Kinser's disappearance. This evidence alone absent the evidence establishing motive is enough to let appellant's conviction for murder stand.

Alternatively, if it was error to admit the questioned evidence, I believe it was harmless error.

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.

*Commonwealth v. Thornton,* 494 Pa. 260, 431 A.2d 248 (1981). The evidence presented at trial proving appellant's guilt was so overwhelming that the evidentiary rulings in question are insignificant by comparison. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). I would therefore affirm the judgment of sentence.