505 A.2d 331

COMMONWEALTH of Pennsylvania

v.

Nevin George SWEGER, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 17, 1985.

Filed Feb. 26, 1986.

Frederick I. Huganir, Norristown, for appellant.

Kevin A. Hess, Assistant District Attorney, Carlisle, for Com., appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

WICKERSHAM, Judge:

Nevin George Sweger, Jr., facing a life sentence following his conviction for the murder of his wife Nancy, filed this direct appeal from the judgment of sentence of the Court of Common Pleas of Cumberland County. We affirm.

The facts, viewed in the light most favorable to the Commonwealth as verdict-winner, may be summarized as follows: Nevin and Nancy Sweger were married in July 1975. A son, Nevin W. Sweger, nicknamed "Bubb," was born in August 1980. The Swegers' marriage was turbulent, and the parties separated and reconciled several times. Appellant had a history of physically abusing his wife, and

a severe beating on October 18, 1983 culminated in Nancy leaving the marital home with Bubb and filing an action in divorce.[1] Appellant was very upset by this separation and a few days prior to his wife's death, he told a friend that he wanted his wife and son back, but that if "he couldn't have Nancy no one would," and that "he ought to ... go up and shoot her." N.T. at 106. Numerous witnesses testified that Nancy was terrified of appellant, because of the beatings which she had suffered and repeated threats which he had made to her.

On the morning of December 31, 1983, appellant began drinking. He met some friends, went to a bar that afternoon and continued drinking. He went to a friend's house and left there around 3:15 p.m. Sometime between 3:15 p.m. and 4:10 p.m., he arrived at his mother-in-law's residence in West Pennsboro Township, where Nancy and Bubb were then living. He was armed with a .12 gauge shotgun, which he used to shoot out the back window of Nancy's parked car and then to shoot open the locked door.[2] He found Nancy in the bedroom, on the bed, holding Bubb. No one else was home. Nancy pleaded with him not to hurt Bubb, and he told her to put the child down. After she did so, he shot her four times at close range. Bubb was not shot, but suffered a head wound requiring stitches.

Appellant called his mother at 4:10 p.m., told her he had shot Nancy, and asked her to come and get Bubb. Upon arriving at the scene, appellant's mother called an ambulance. Shortly after the ambulance arrived, appellant shot himself in the head. He was taken by ambulance to the Carlisle Hospital. The following day, he was interviewed by a police officer in the intensive care unit. At that time, and in the presence of his mother, he admitted going to the victim's home, shooting open the door, and "blasting" his

1. During the period of the last separation, the victim also obtained a Protection from Abuse order against appellant.
2. Shots were also fired at various inanimate objects in the living room, such as a television and a lamp.

wife. His subsequent statements were later suppressed by the court below before trial.

Appellant was charged with murder. His motion to suppress the statements made on January 1, 1984 at the hospital was granted in part, as noted above, on May 10, 1984. A jury trial before the Honorable Edgar B. Bayley on May 14–16, 1984 resulted in appellant's conviction of murder in the first degree. Post-trial motions were timely filed and denied by the court *en banc* on September 5, 1984. On October 11, 1984, appellant was given a mandatory sentence of life imprisonment. This appeal timely followed.

Appellant raises the following issues before us:

A. Was the charge to the jury an incorrect and confusing statement of law concerning degrees of homicide?

B. Did the court fail to properly instruct the jury as to the elements and burden of proof for the intoxication defense?

C. Did the court err by allowing hearsay testimony evidence as to the state of the mind of the deceased?

D. Did the court err by admitting into evidence statements obtained from the defendant without benefit of counsel under questioning by police officers?

E. Did the court err by failing to arrest judgment on the basis that there was insufficient evidence to support the verdict beyond a reasonable doubt?

Brief for Appellant at 3.

Appellant argues that the evidence was insufficient to support a verdict of guilty of first degree murder beyond a reasonable doubt. "When sufficiency of the evidence claims are raised, an appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction." *Commonwealth v. Hart,* 348 Pa.Super. 117, 122, 501 A.2d 675, 677, (1985), *quoting Commonwealth v. Madison,* 501 Pa. 485, 490, 462

A.2d 228, 231 (1983). After thoroughly examining the evidence presented, and taking from it all reasonable inferences favorable to the Commonwealth and resolving all conflicting evidence in its favor, *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985), this argument fails.

 A person is guilty of criminal homicide if he intentionally, knowingly, recklessly, or negligently causes the death of another. 18 Pa.C.S. § 2501(a). A criminal homicide becomes a murder of the first degree when it is committed by an intentional killing. 18 Pa.C.S. § 2502(a); *Commonwealth v. Pacell*, 345 Pa.Super. 203, 497 A.2d 1375 (1985). We find the evidence presented at trial to be more than sufficient to sustain the jury's verdict of murder of the first degree. It is well-settled that the use of a gun on a vital part of the deceased's body raises the presumption that the defendant shot with the intent to kill the deceased. *Commonwealth v. Ewing*, 439 Pa. 88, 264 A.2d 661 (1970). It is equally well-settled that the period of premeditation necessary to form the specific intent to kill may be very brief. *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981). The evidence herein proved beyond a reasonable doubt that appellant intentionally murdered his wife. As fact finders, the jury had the right to not believe appellant's version of the murder, as presented by his defense. *Commonwealth v. Pacell, supra. See also Commonwealth v. Cross*, 508 Pa. 322, 496 A.2d 1144 (1985); *Commonwealth v. Vedam*, 349 Pa.Super. 270, 502 A.2d 1383 (1985). Because the evidence was sufficient to support a conviction of first degree murder, the trial court did not err by failing to grant appellant's motion in arrest of judgment.

 Appellant's argument that the trial court erred by admitting into evidence the statements obtained from appellant the day after the shooting, while he was hospitalized due to his suicide attempt, must also fail for the reasons expressed by the suppression court in its opinion dated May 10, 1984. A careful reading of the transcript of the suppression hearing shows that the suppression court's find-

ings of fact were well-supported by the evidence. The statements made before Trooper Brennan asked the question "why" were admissible because they were not in response to any police interrogation, but instead were voluntary "blurt-outs." The statements made after the trooper asked "why" were correctly suppressed by the court as products of interrogation without benefit of counsel or waiver of that benefit. Appellant's current allegation in his brief that Trooper Brennan coerced the first statements by threats against appellant's son Bubb are simply unsupported by the record. *See* Finding of Fact 6, Lower ct. op., May 10, 1984 at 2. Moreover, this allegation was not raised during the suppression hearing or at trial and so cannot be raised here on appeal. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978). *Accord Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985).

Appellant's remaining issues, which are thoroughly addressed by the lower court *en banc* in its opinion dated September 5, 1984, concern the charge given the jury by the trial court and the admission of certain hearsay evidence as to the state of mind of the victim. In reviewing jury instructions for reversible error, we must read the charge as a whole. Error cannot be predicated on isolated excerpts of the charge; it is the general effect of the charge that controls. *Commonwealth v. Drexel*, 349 Pa.Super. 335, 503 A.2d 27 (1986); *Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035 (1984). We have examined the entire charge, including those portions covering the degrees of murder, specific intent, malice, and intoxication, and conclude that the court's instructions were proper and adequate. A trial court is not required to accept requested points for charge verbatim, but is free to use its own form of expression so long as the applicable law is clearly, adequately, and accurately explained to the jury. *Commonwealth v. Frederick*, 327 Pa.Super. 199, 475 A.2d 754 (1984). Such was the case herein.

Finally, questions concerning the admission or exclusion of evidence are within the sound discretion of the

trial court and will not be reversed on appeal absent a clear abuse of that discretion. *Lewis v. Pruitt*, 337 Pa.Super. 419, 487 A.2d 16 (1985). Furthermore, not only must a clear abuse of discretion be shown but there must be a showing that actual prejudice has occurred. *Id.* After examining the transcript, we cannot say that the trial court clearly abused its discretion in its various rulings on the evidence concerning the deceased's state of mind. Additionally, appellant has not convinced us that any actual prejudice occurred because of the court's rulings. *See Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa.Super. 336, 499 A.2d 637 (1985).

Finding no merit to appellant's issues, we affirm the judgment of sentence.

CIRILLO, President Judge, files a concurring opinion.

CIRILLO, President Judge, concurring:

I agree completely with the holding here today and the analysis employed in reaching that result. I write separately only to amplify a concern of the trial court regarding the proper components of a jury charge on first-degree murder.

The courts of this Commonwealth, this Court being no exception, have long used the words "malice" and "malicious" in describing the specific intent necessary to support a first-degree murder conviction. *See e.g., Commonwealth v. Cross*, 508 Pa. 322, 496 A.2d 1144 (1985); *Commonwealth v. Gardner*, 490 Pa. 421, 416 A.2d 1007 (1980); *Commonwealth v. Person*, 345 Pa.Super. 341, 498 A.2d 432 (1985) (Opinion by Cirillo, J.)

To be convicted of murder in the third-degree, the defendant must have acted with malice. *Commonwealth v. Dennis*, 506 Pa. 460, 485 A.2d 1097 (1984). Herein lies a potential source of confusion for the courts, and more importantly, for jurors. Malice is a technical term, a mens rea in and of itself, as it relates to third-degree murder. At the same time, however, the word malice is used as an

adjective in describing the specific intent which supports a conviction of murder in the first-degree.

As amended in 1974, 18 Pa.C.S. § 2502 dictates that first-degree murder is an intentional killing; malice is nowhere mentioned as a requisite element. Surely, this is because an intentional killing is *necessarily* malicious. In my view, when a jury is being instructed on the meaning of first-degree murder, use of the word "malice" should be avoided entirely, lest during deliberations the distinction between first and third-degree murder becomes blurred. The trial court should simply borrow from the statute itself, explaining that an intentional killing is that which is the result of poison, lying in wait, or any other willful, deliberate, premeditated act.

In the present case, there is no indication that the jury was actually confused on this point. Hence, I join in today's holding.