J-S15009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN DONNELL D. CARTER | |
| Appellant | No. 2938 EDA 2017 |

Appeal from the Judgment of Sentence March 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0004485-2013

BEFORE: STABILE, DUBOW, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED JUNE 26, 2018**

Appellant Sean Donnell D. Carter appeals from the March 23, 2017 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his bench convictions for aggravated assault, endangering the welfare of children ("EWOC"), possession of an instrument of crime ("PIC"), simple assault, and recklessly endangering another person ("REAP").[1] Upon review, we affirm.

The facts and procedural history of this case are undisputed. As recounted by the trial court:

The [foregoing] charges arose out of incidents that occurred in the late summer of 2012, during which [A]ppellant injured I.H., a two-

---

[1] 18 Pa.C.S.A. §§ 2702(a), 4304(a)(1), 907(a), 2701(a), and 2705, respectively.

year old child in his care,[2]causing her to suffer a knife wound to her head as well as an injury to her left hand and other parts of her that required her to be hospitalized and undergo surgery for a fractured skull.

. . . .

On September 19, 2012, [when Appellant was serving as I.H.'s guardian], she was transported by an ambulance to St. Christopher's Hospital in Philadelphia. Upon examination, I.H. was deemed to have a five to six centimeter long laceration to her skull and an injury to her left hand as well bruising to various parts of her body. [Appellant] stated that the injury to her skull was caused by a large chopping knife that accidentally fell a couple of feet off of top of a counter as he was washing dishes and the injury to her hand was self-inflicted by I.H. herself when she began flailing about in a bathtub as [Appellant] attempted to clean the wound to her head. He further stated that as he was calling for an ambulance, I.H. fell down some steps. He added that the bruises on I.H.'s buttocks resulted from her having to wear diapers and a bruise on her leg from a bug bite.

An examination of I.H's skull revealed that it had been fractured and a membrane around her skull had been penetrated by the knife. I.H. also had bleeding under her skull caused by an injury to another part of her skull, which damaged part of her brain and which was not caused by having been stuck with the knife. Due to the severity of the knife wound, I.H. had to undergo surgery to repair the fracture and the damage to her scalp and the membrane around her skull.

In addition to the laceration, skull fracture, and bruising to her brain, I.H. also had bruises on various parts of her body, including her left thigh, buttocks, chin, ankle, top of the knee and on both sides of her left hand.

Dr. Maria DiGiorgio McColgan, who specialized in ascertaining whether children who have suffered physical injuries were victims of abuse, examined I.H. a day after she was admitted to the hospital and reviewed I.H.'s medical records. Based on that review, the doctor opined that some of the bruises were caused by an implement of some sort such as a hair brush that some of them were not a day old, the bruise on her leg was not caused by a bug bite, and the ones on her buttocks did not result from wearing a diaper. She added that it was also her opinion that the knife wound was not caused in the manner in which [Appellant] said it was given the length of the laceration, the fact that it fractured the victim's skull. She added that because the knife was light in weight it would not have been able to inflict the laceration

---

[2] Appellant agreed to care for I.H. while her mother was enrolled in a drug rehabilitation program.

and fractured skull if the incident had occurred as [Appellant] said it did because the blade of the knife would have had to have contacted I.H's skull perpendicular to it at a faster rate of speed than would have been generated had the knife simply fell off the counter. Finally, the doctor stated that the injuries to I.H's body were not caused by another young child or by having ridden a tricycle and that I.H. could not have caused the injury to her left hand by flailing about while being treated by [Appellant] because it would have required a larger of amount of force to cause the observed injuries to it.

In addition to reviewing records and examining I.H, Dr. McColgan spoke to I.H. a couple of days after her surgery. I.H. related that "Daddy" had caused her bruises by hitting her with something and also spontaneously said in the presence of a medical student that, "Daddy hit me with a knife." Dr. McColgan noted that the bruising to I.H.'s buttocks caused a high creatine phosphokinase (CPK) level, which the doctor explained could have been caused by the breakdown of muscle tissue as a result of the bruising caused by strikers to her body. Finally, she stated that I.H. suffered from developmental difficulties, which could have resulted from being born to a drug dependant mother and the abuse she suffered.

Ms. Karen Darelene Montgomery, an employee of the Philadelphia Department of Human Services (hereinafter DHS), interviewed [Appellant] on September 20, 2012, inside the residence where the incident occurred. During the interview, [Appellant] stated that I.H.'s mother permitted him and his paramour to watch I.H. while her mother received drug treatment, that I.H. called him "Daddy" and his paramour "Mommy," and that he was alone with I.H. when she suffered the laceration. [Appellant] further stated that he was doing the dishes and when he placed a pot down on the tip of the knife, the knife flipped into the air and down onto I.H., causing the laceration to her head as she was sitting on the counter. He further stated that he wrapped the injury in a towel, called 911, and took I.H. upstairs to wash the wound. He further stated that while in the tub, I.H. was flailing about and hit her hand on the faucet injuring it. Finally, with regard to a bruise on I.H.'s forehead, [Appellant] surmised that it occurred when I.H. tripped on steps getting out of the bathtub and hit her face, and that other injuries looked like bug bites, not bruises.

After relating the foregoing, [Appellant] took Ms. Montgomery into the kitchen and attempted to replicate what occurred to cause the laceration on I.H.'s head. Using a knife smaller than the one that caused the laceration to I.H. (the actual knife had been confiscated by police), he could not duplicate how I.H. was injured. He also stated that he did not know how I.H.'s buttocks were bruised and said that they could have resulted from her having tried to ride a tricycle at a cookout. Finally, Ms. Montgomery indicated that when the knife flipped off of the

- 3 -

counter, I.H. was sitting on the floor near the corner of the counter and not on top of the counter as he previously stated.

[C.H.],[3] I.H.'s mother, indicated that in August of 2012, she agreed to let [Appellant] take care of I.H. while she received drug treatment. [Appellant] brought I.H. to see her every Sunday. During one of those visits in early September of 2012, as she was leaving, I.H. became anxious and said that she did not want to go back with "Daddy Sean." She also said the same thing to C.H.'s sister and began crying during that conversation.

[C.H.] visited I.H. in the hospital and I.H. told her that, "Daddy Sean did it[]" and that he also caused a bruise that [C.H.] saw when she changed I.H.['] diaper. She further testified that she noticed a change in I.H., and that when she visited I.H. in the hospital, I.H had injuries that were not present a couple of days before I.H. was taken to the hospital.

Philadelphia Police Officer Tyrone Green of the Special Investigations Unit was assigned to investigate the incident. In the course of doing so, he spoke to [Appellant] at his residence and [Appellant] explained that the cut to I.H.'s head occurred when a knife accidentally fell off of a kitchen counter onto I.H., who was standing or sitting next to [Appellant] as he stood in the kitchen. When Officer Green asked [Appellant] about other bruises on I.H.'s body, [Appellant] said that he thought that some of them may have been caused by spider bites she incurred in her crib and others from him having "popped" her on her hand and twice on her thigh. Officer Green confiscated a knife that [Appellant] said was the one that caused the laceration, which was over eleven inches long, light in weight, and had seven holes above its blade.

Trial Court Opinion, 10/25/17, at 1-5 (unnecessary capitalizations and footnote omitted). Appellant subsequently was charged with, *inter alia*, aggravated assault, EWOC, PIC, simple assault, and REAP. Following a bench trial, the trial court found him guilty of all five offenses and sentenced him to ten to twenty years' imprisonment followed by seven years of probation on March 23, 2017. Appellant filed post-sentence motions, which the trial court denied on August 29, 2017. Appellant timely appealed to this Court.

---

[3] To protect the I.H.'s (a minor victim) privacy, we have abbreviated her mother's name.

- 4 -

The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises five issues for our review:

I. Is the evidence insufficient to sustain the verdict of guilt because the Commonwealth failed to prove Appellant possessed the requisite *mens rea* for aggravated assault— causing serious bodily injury, [EWOC], [PIC], simple assault, and [REAP]?

II. Is the evidence insufficient to sustain the verdict of guilt because the Commonwealth's expert witness was unable to fully explain how each of the [victim's] injuries occurred?

III. Is the verdict against the weight of the evidence because the [victim] indicated that Appellant's girlfriend cause her injuries?

IV. Did the trial court err in admitting hearsay testimony from the [victim's] biological mother?

V. Did the sentencing court fail to put specific reasons on the record supporting the imposition of an aggravated sentence?

Appellant's Brief at 4.

At the outset we note that Appellant has failed to preserve his first, fourth and fifth issues for review. With respect to his first claim implicating the sufficiency of the evidence, Appellant merely asserts that he generally lacked the *mens rea* to commit the crimes without analyzing or discussing the *mens rea* elements of each specific crime. His analysis of the *mens rea* claim is bereft of any legal authority, and limited to one paragraph, comprised of barely nine lines, reproduced here verbatim:

Appellant's actions in ensuring I.H. received prompt medical attention as well as his full cooperation in the instant investigation directly contradict any evidence that Appellant acted intentionally,

knowingly or recklessly. Appellant provided detectives and DHS with the version of events as they unfolded and turned over the knife that caused the laceration to I.H. Appellant unequivocally indicated to each witness that the knife fell while he was doing the dishes. Moreover, I.H.'s biological mother testified that she did not believe Appellant would harm I.H.[4]

Appellant's Brief at 12.[5] It is well-settled that "Pennsylvania Rule of Appellate Procedure 2119 contains mandatory provisions regarding the contents of briefs. Rule 2119(a) requires the argument to be followed by discussion and pertinent citation of authorities. Additionally, this Court has held that arguments which are not sufficiently developed are waived." **Commonwealth v. Irby**, 700 A.2d 463, 464 (Pa. Super. 1997) (citation omitted). "It is the [a]ppellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law." **Commonwealth v. Thomas**, 909 A.2d 860, 862 (Pa. Super. 2006) (citation omitted). In **Commonwealth v. Johnson**, 985 A.2d 915 (Pa. 2009), our Supreme Court explained: "where an appellate brief fails to provide any discussion of a claim with citation to relevant

---

[4] Appellant mischaracterizes what I.H. mother actually said about him at trial. Our review of the trial transcript reveals the following exchange:

> Q. Do you have any bad feelings at all towards [Appellant] and besides **what he did**, **before this happened** and you let him take care of daughter, did you have any bad feeling?
>
> A. No, I never thought he would endanger my child.

N.T. Trial, 10/7/16, at 103 (emphasis added).

[5] It also appears that Appellant invites us to reweigh the evidence and credit his proffered version of events. We decline the invitation. **Commonwealth v. McClellan**, 178 A.3d 874, 878 (Pa. Super. 2018) ("In deciding a sufficiency of the evidence claim, this court may not reweigh the evidence and substitute our judgment for that of the fact-finder.").

authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **Johnson**, 985 A.2d at 924 (citation omitted). As mentioned, the argument section of Appellant's brief generally discusses the element of *mens rea*, but fails to analyze it in relation to the individual crimes at issue here. Additionally, Appellant's argument section lacks any legal authority. Accordingly, we find his first claim waived. Even if it were not waived, he still would not be entitled to relief based on the reasons outlined in the trial court's October 25, 2017 opinion, which we adopt fully. **See** Trial Court Opinion, 10/25/17, at 5-11.

Next, Appellant likewise waived his fourth claim challenging the trial court's evidentiary ruling. As the Commonwealth notes, and confirmed by our review of the record, Appellant failed to lodge a timely hearsay objection when I.H.'s mother testified that I.H. told her "I don't want to go back to Daddy Sean." The Commonwealth's Brief at 13 (citing N.T. Trial, 10/7/16, at 94-95); **see** Pa.R.E. 103(a) (party may claim error in admission of evidence only when party makes a timely objection); **Commonwealth v. Heckathorn**, 241 A.2d 97, 102 (Pa. 1968) (failure to object to purported hearsay testimony resulted in waiver); **see also Commonwealth v. Torres–Kuilan**, 156 A.3d 1229 (Pa. Super. 2017) (citing **Commonwealth v. Spell**, 28 A.3d 1274, 1280 (Pa. 2011)) (failure to raise a timely objection waives issue), and Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Even if this issue was not waived, Appellant

obtains no relief based on the reasons outlined in the trial court's October 25, 2017 opinion. **See** Trial Court Opinion, 10/25/17, at 14-16.[6]

Lastly, we agree with the Commonwealth's contention that Appellant's fifth issue challenging the discretionary aspects of sentence is waived because he failed to include a Pa.R.A.P. 2119(f) statement in his brief. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (holding that this Court is precluded from reaching the merits of a discretionary aspects of sentencing claim when the appellant fails to include a Rule 2119(f) statement, and the Commonwealth lodges an objection to the omission of the statement).

We now turn the merits of Appellant's second and third issues on appeal. After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's claims. **See** Trial Court Opinion, 10/25/17, at 11-13. Accordingly, we affirm Appellant's judgment of sentence. We further direct that a copy of the trial court's October 25, 2017 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

---

[6] We note that the trial court incorrectly refers to Pa.R.E. 613 when discussing Pa.R.E. 803(3).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18

*5938 EDA 2017*

Circulated 05/31/2018 03:29 PM

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | COURT OF COMMON PLEAS OF PHILADELPHIA |
| VS. : | CRIMINAL TRIAL DIVISION |
| : | CP-51-CR-0004485-2013 |
| SEAN DONNELL D. CARTER : | |

CP-51 CR-0004485-2013 Comm v Carter Sean Donnell D
Opinion

8021231471

### OPINION

## PROCEDURAL HISTORY

Sean Donnell D. Carter, the above-named defendant, was charged as of the above Bill and Term number with, *inter alia*, aggravated assault, graded as a felony of the first degree, endangering the welfare of children (hereinafter EWOC), simple assault, possessing instruments of crime, generally (hereinafter PIC), and recklessly endangering another person (hereinafter REAP). These charges arose out of incidents that occurred in the late Summer of 2012, during which appellant injured I.H., a two-year old child in his care, causing her to suffer a knife wound to her head as well as an injury to her left hand and other parts of her that required her to be hospitalized and undergo surgery for a fractured skull.

Defendant was tried in October of 2016, before this Court, sitting without a jury. At the conclusion of the trial, this Court found appellant guilty of the above offenses. Sentencing occurred on March 23, 2017, on which date this Court imposed an aggravated sentence of ten to twenty years' incarceration followed by seven years' probation on defendant. Following the

1

imposition of sentence, appellant filed a post-sentence motion and when it was denied, a timely

notice of appeal and a requested Pa.R.A.P. 1925(b) Statement.

## FACTUAL HISTORY

On September 19, 2012, two-year old I.H. was transported by an ambulance to St.

Christopher's Hospital in Philadelphia. Upon examination, I.H. was deemed to have a five to six

centimeter long laceration to her skull and an injury to her left hand as well bruising to various

parts of her body. Defendant stated that the injury to her skull was caused by a large chopping

knife that accidentally fell a couple of feet off of top of a counter as he was washing dishes and

the injury to her hand was self-inflicted by I.H. herself when she began flailing about in a

bathtub as defendant attempted to clean the wound to her head. He further stated that as he was

calling for an ambulance, I.H. fell down some steps. He added that the bruises on I.H.'s buttocks

resulted from her having to wear diapers and a bruise on her leg from a bug bite.[1]

An examination of I.H.'s skull revealed that it had been fractured and a membrane around

her skull had been penetrated by the knife. I.H. also had bleeding under her skull caused by an

injury to another part of her skull, which damaged part of her brain and which was not caused by

having been struck with the knife. Due to the severity of the knife wound, I H. had to undergo

surgery to repair the fracture and the damage to her scalp and the membrane around her skull.

In addition to the laceration, skull fracture, and bruising to her brain, I.H. also had

bruises on various parts of her body, including her left thigh, buttocks, chin, ankle, top of the

knee and on both sides of her left hand.

Dr. Maria DiGiorgio McColgan, who specialized in ascertaining whether children who

have suffered physical injuries were victims of abuse, examined I.H. a day after she was

---

[1] Defendant was serving as the child's guardian at the time because her mother was in a drug rehabilitation program

2

admitted to the hospital and reviewed I.H.'s medical records. Based on that review, the doctor opined that some of the bruises were caused by an implement of some sort such as a hair brush that some of them were not a day old, the bruise on her leg was not caused by a bug bite, and the ones on her buttocks did not result from wearing a diaper. She added that it was also her opinion that the knife wound was not caused in the manner in which defendant said it was given the length of the laceration, the fact that it fractured the victim's skull. She added that because the knife was light in weight it would not have been able to inflict the laceration and fractured skull if the incident had occurred as defendant said it did because the blade of the knife would have had to have contacted I.H's skull perpendicular to it at a faster rate of speed than would have been generated had the knife simply fell off the counter. Finally, the doctor stated that the injuries to I.H.'s body were not caused by another young child or by having ridden a tricycle and that I.H. could not have caused the injury to her left hand by flailing about while being treated by defendant because it would have required a larger of amount of force to cause the observed injuries to it.

In addition to reviewing records and examining I.H., Dr. McColgan spoke to I H. a couple of days after her surgery. I.H. related that "Daddy" had caused her bruises by hitting her with something and also spontaneously said in the presence of a medical student that, "Daddy hit me with a knife." Dr. McColgan noted that the bruising to I.H.'s buttocks caused a high creatine phosphokinase (CPK) level, which the doctor explained could have been cause by the breakdown of muscle tissue as a result of the bruising caused by strikes to her body. Finally, she stated that I.H suffered from developmental difficulties, which could have resulted from being born to a drug dependent mother and the abuse she suffered.

Ms. Karen Darlene Montgomery, an employee of the Philadelphia Department of Human Services (hereinafter DHS), interviewed defendant on September 20, 2012, inside the residence where the incident occurred. During the interview, defendant stated that I.H.'s mother permitted him and his paramour to watch I.H. while her mother received drug treatment, that I.H. called him "Daddy" and his paramour "Mommy," and that he was alone with I.H. when she suffered the laceration. Defendant further stated that he was doing the dishes and when he placed a pot down on the tip of the knife, the knife flipped into the air and down onto I.H., causing the laceration to her head as she was sitting on the counter. He further stated that he wrapped the injury in a towel, called 911, and took I.H. upstairs to wash the wound. He further stated that while in the tub, I.H. was flailing about and hit her hand on the faucet injuring it. Finally, with regard to a bruise on I.H.'s forehead, defendant surmised that it occurred when I.H. tripped on steps getting out of the bathtub and hit her face, and that other injuries looked like bug bites, not bruises.

After relating the foregoing, defendant took Ms. Montgomery into the kitchen and attempted to replicate what occurred to cause the laceration on I.H.s head. Using a knife smaller than the one that caused the laceration to I.H. (the actual knife had been confiscated by police), he could not duplicate how I.H. was injured. He also stated that he did not know how I H.'s buttocks were bruised and said that they could have resulted from her having tried to ride a tricycle at a cookout. Finally, Ms. Montgomery indicated that when the knife flipped off of the counter, I.H. was sitting on the floor near the corner of the counter and not on top of the counter as he previously stated

Christine Smolinski, I.H.'s mother, indicated that in August of 2012, she agreed to let defendant take care of I.H. while she received drug treatment. Defendant brought I.H. to see her

every Sunday. During one of those visits in early September of 2012, as she was leaving, I M became anxious and said that she did not want to go back with "Daddy Sean." She also said the same thing to Ms. Smolinski's sister and began crying during that conversation.

Ms. Smolinski visited I.H. in the hospital and I.H. told her that, "Daddy Sean did it." and that he also caused a bruise that Ms. Smolinski saw when she changed I.H." diaper. (N.T. 10/7/16. 97). She further testified that she noticed a change in I.H.'s behavior, that defendant refused to explain to her what had happened to I H., and that when she visited I.H. in the hospital, I.H had injuries that were not present a couple of days before I.H. was taken to the hospital.

Philadelphia Police Officer Tyrone Green of the Special Investigations Unit was assigned to in investigate the incident. In the course of doing so, he spoke to defendant at his residence and defendant explained that the cut to I.H.'s head occurred when a knife accidentally fell off of a kitchen counter onto I.H., who was standing or sitting next to defendant as he stood in the kitchen. When Officer Green asked defendant about other bruises on I.H.'s body, defendant said that he thought that some of them may have been caused by spider bites she incurred in her crib and others from him having "popped" her on her hand and twice on her thigh. Officer Green confiscated a knife that defendant said was the one that caused the laceration, which was over eleven inches long, light in weight, and had seven holes above its blade.

## DISCUSSION

In his 1925(b) statement, defendant first argues that the evidence was insufficient to sustain the charges because the Commonwealth failed to prove beyond a reasonable doubt that defendant acted with the *mens rea* necessary to prove each of the crimes for which defendant was convicted. In reviewing a

5

claim that alleges that the evidence was insufficient to support a verdict, the Pennsylvania Supreme Court provided the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Pappas, 845 A.2d 829, 825 (Pa.Super.Ct. 2004), citing Commonwealth v. Lehman, 820 A.2d 766 (Pa.Super.Ct. 2003). In addition, "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v Widmer, 744 A.2d 745, 751 (Pa. 2000).

With regard to the crime of aggravated assault, a person is guilty of that crime, graded as a felony of the first-degree if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1) & (b). Thus, in order to prove that a defendant harbored the necessary *mens rea* to be convicted of aggravated assault,

6

the evidence must establish that he acted with malice. Commonwealth v. Kling, 731 A.2d 145, 147 (Pa.Super. 1999), appeal denied, 745 A.2d 1219 (Pa. 1999). The malice that is required for aggravated assault is the same as that required for third- degree murder. Id.

"Malice has been defined as a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Commonwealth v. Thomas, 656 A 2d at 516 (internal quotation marks and citation omitted). In determining whether a defendant acted with malice, "all facts, including those before, during, and after the event, must be considered." Commonwealth v. Thomas, 656 A.2d at 516.

The Superior Court addressed the law to be applied in aggravated assault cases as follows:

> Where, as here, the victim suffered serious bodily injury, the Commonwealth may establish the *mens rea* element of aggravated assault with evidence that the assailant acted either intentionally, knowingly, or recklessly. Looking first to whether evidence established intent to cause serious bodily injury, we note that such an inquiry into intent must be determined on a case-by-case basis. Because direct evidence of intent is often unavailable, intent to cause serious bodily injury may be shown by the circumstances surrounding the attack. In determining whether intent was proven from such circumstances, the fact finder is free to conclude "the accused intended the natural and probable consequences of his actions to result therefrom.

Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa.Super. 2007), internal citations omitted, quoting Commonwealth v. Rosado, 684 A.2d 605, 608 (Pa. Super 1996).

Instantly, the evidence overwhelmingly established that defendant acted with the requisite malice to make out the crime. While acting as the guardian of two-year old I.H., she suffered a serious bodily injury to her skull and other injuries to the rest of her body. Although defendant claimed that the injury to the scalp and elsewhere on her body were caused

7

accidentally, other evidence completely undermined that assertion, given that the knife used to inflict the serious wound to I.H.'s skull could not have caused the injury to her in the manner in which defendant claimed it did, defendant admitted that he "popped" the victim on more than one occasion, and there was evidence her other injuries were not caused accidently.[2] The injury to her scalp and skull could only have been caused intentionally and because defendant was watching I.H. at the time she was injured, this Court, sitting as fact-finder, was free to infer that he intentionally caused the serious injury to her head. As noted above, the finding that a defendant acted intentionally may be inferred from the totality of the circumstances surrounding the incident. See also Commonwealth v. Matthew, 558 Pa. 47, 494, 909 A.2d 1254, 1258 (Pa. 2006) (reaffirming the totality of the circumstances test); Commonwealth v Alexander, 383 A.2d 887, 889 (Pa. 1978) ("[c]riminal intent may be proved by direct or circumstantial evidence").

Here, I.H.'s injury to her scalp and the other injuries she suffered resulted from a knife intentionally used to strike her on the head and by the use of some instrumentality that caused blunt force trauma. It took a significant amount of force to fracture I.H.'s skull and to cause some of her bruises. It follows then that because a person is presumed to intend the natural and probable consequences of his actions, Commonwealth v. O'Searo, 466 Pa. 224, 237, 352 A.2d 30, 36 (1976), this fact finder could conclude that defendant, an adult, intentionally struck a two year-old infant so often and so hard that he lacerated and fractured her skull, separately caused a bruise to her brain, and caused bruises to other parts of her body so serious that they raised her

---

[2] The existence of plausible alternative scenarios do not undermine the sufficiency of the evidence Commonwealth v Andrews, 5768 A.2d 304, 317 (Pa. 2001), Commonwealth v Johnson, 833 A 2d 260, 264 (Pa Super 2005) See also Commonwealth v. Hardy, 918 A2d 766, 774 (Pa Super 2007) (a claim that the factfinder "should have believed" certain defense evidence is not a sufficiency claim at all), appeal denied, 940 A.2d 362 (Pa 2008), Commonwealth v Payne, 868 A 2d 1257, 1261 (Pa. Super. 2005) (it is an issue for the fact-finder, and not a question of sufficiency, whether other persons in addition to defendant could have injured the victim)

CPK level to dangerous levels. Given the foregoing, it is clear that the Commonwealth established the necessary *mens rea* to prove defendant guilty of aggravated assault graded as a felony of the first degree. See Commonwealth v. Hart, 501 A.2d 675, 678 (Pa. Super. 1985) (evidence of child's injuries sufficient to prove offense of aggravated assault).

Regarding defendant's EWOC conviction the applicable law provides:

> (a)Offense defined.—
> (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.
> (b) Grading.—An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S.A. § 4304(a)(1), (b).

Thus, the *mens rea* necessary to find a person guilty of EWOC requires proof beyond a reasonable doubt that the accused knowingly committed a violation of the duty of care. "A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S. § 302. Thus, if a person is aware that the person's act of violating a duty of care is practically certain to result in danger to a child, then that person has acted knowingly for purposes of the EWOC statute. Commonwealth v. Wallace, 817 A.2d 485, 492 (Pa. Super.2002).

Here, the evidence was more than sufficient to establish that defendant knowingly endangered I.H. by violating his duty of care *vis à vis* her. As noted above, I.H. suffered serious bodily injury while in defendant's care, afflictions that could only have been the result of

9

knowing and intentional conduct. The child was struck with a knife, which lacerated her scalp and fractured her skull. She also had bruises on her body caused by some sort of object. Such evidence alone was sufficient to sustain the EWOC charge.

The Commonwealth also successfully proved the *mens rea* required to convict defendant of simple assault. 18 Pa. C S.A. §2701(a)(1) provides that a person is guilty of assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." Thus, to convict defendant of that crime the Commonwealth had to prove that he committed an act or acts intentionally, knowingly or recklessly that caused I.H. to suffer bodily injury.

It is beyond cavil that the Commonwealth succeeded in that endeavor. In fact, the record shows that I.H. suffered serious bodily injury, not bodily injury, at the hands of defendant, which is noted above in the discussion involving the aggravated assault charge. Thus, the Commonwealth met its burden of proving that defendant acted with the requisite *mens rea* with respect to this crime.

Regarding PIC, a person is guilty of that crime if he or she possesses any instrument of crime with intent to employ it criminally. 18 Pa.C.S. § 907(a). An instrument of crime is anything specially made or specially adapted for criminal use, or anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have. 18 Pa.C.S. § 907(d). "[I]t is the actor's criminal purpose that provides the touchstone of his liability for possessing an instrument of crime." Commonwealth v. Andrews, 768 A.2d 309, 317(Pa. 2001), quoting Model Penal Code § 5.06 comment. Such purpose maybe inferred from the circumstances surrounding the possession. Id. at 318.

A carefully reading of the statute indicates that the *mens rea* for PIC is the intent to use an instrument for criminal purposes. Here, the evidence showed that defendant used a knife to

10

lacerate I.H.'s scalp and fracture her skull. Such use of the knife was sufficient to prove that he had the intent underlying the crime. Thus, it is suggested that no relief be granted on this claim.

Finally, the *mens rea* of REAP is recklessness. Commonwealth v. Reynolds, 835 A.2d 720, 727 (Pa. Super. 2003), quoting Commonwealth v. Klein, 795 A.2d 424, 427–28 (Pa. Super.2002) (citations omitted) (indicating the "*mens rea* for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person" and "serious bodily injury" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ").

The evidence clearly established that defendant acted recklessly with respect to I.H. In addition to intentionally causing serious bodily injury to her, he ignored her medical needs after he struck her hard enough to cause bruises that resulted in the breakdown of muscle tissue and did not seek medical help for I.H. He also admitted "popping" I.H. Given that she was only two years' old, such acts evinced the requisite recklessness necessary to make out this charge. Thus, it is suggested that defendant be denied relief with respect to this claim.

In his second claim, defendant argues that the evidence was insufficient because the Commonwealth's expert was unable to explain how each of I.H.'s injuries occurred Although defendant does not indicate what the claim is predicated on, it appears that defendant is referring to the fact that Dr. McColgan was unable to elucidate upon the degree of force with which the knife would have had to hit I.H.'s head to cause the injuries observed on I.H.'s head. (N.T. 10/7/16, 53- 56).

A review of the evidence in a light most favorable to the Commonwealth establishes that there is no merit to this claim. Dr. McColgan testified that the knife wound I.H. suffered could

11

not have been caused accidentally and had to have been caused intentionally given how straight and clean the laceration was. She also noted that I.H.'s skull was fractured, which could only have resulted from the application of a significant force to her skull. (N.T. 10/7/16, 40, 42, 43, 56, 62). She further testified that some of her bruises were caused by a blunt instrument and defendant admitted that he struck I.H. (N.T. 10/7/16, 24-25). Thus, the testimony viewed in a light most favorable to the Commonwealth established that the Commonwealth's expert was able to testify about how I.H. suffered the injuries she did. Therefore, this claim should be denied.

Third, defendant argues that the verdict was against the weight of the evidence because the evidence presented during the trial indicated that I.H. could have suffered the laceration to her head accidentally and there was evidence that I.H. said at some point that "Mommy" caused her injuries.[3] This Court did not commit an abuse of discretion by denying this claim.

The standard in reviewing a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); see also Commonwealth v. Sanchez, 36 .3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary

---

[3] The defense elicited form Dr McColgan that I.H. said during an interview that both Mommy and Daddy hurt her (N T 10/7/16, 83)

12

to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be give n another opportunity to prevail." (citation omitted)).

The initial determination regarding the weight of the evidence is for the fact-finder. Commonwealth v. Jarowecki, 923 A.2d 425, 433 (Pa. Super. 2007). The trier of fact is free to believe all, some or none of the evidence. Id. A reviewing court is not permitted to substitute its judgment for that of the fact-finder. Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999). When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, appellate review of a trial court's decision is extremely limited. Unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, weight of evidence claims shall be rejected. Commonwealth v. Rossetti, 863 A.2d 1185, 1191 (Pa. Super. 2004).

Applying the foregoing to the instant matter shows that the verdict did not shock the conscience for the reasons cited by defendant. First, as noted in the discussion of the previous issue, the Commonwealth's expert did provide testimony indicating that the knife wound and the bruising were not caused by accident. Second, although I.H. may have remarked that her Mommy hurt her, she said that defendant also hurt her, which this Court believed based on all of the evidence presented during the trial. Third, the fact that I.H. may have accused her mother of abuse does not change the fact that defendant was the only person present with I.H. when she suffered the knife wound to her head, a wound the Commonwealth established beyond a reasonable doubt could not have been caused accidentally. Finally, because defendant was the only person present when I.H. was injured and I.H.'s mother was in a drug rehabilitation program, it is clear that defendant inflicted that injury to I.H., not her mother or some other person. Thus, it is suggested that this claim be denied.

13

Next, defendant argues that this Court committed an abuse of discretion by overruling an objection to the following testimony on hearsay grounds:

> [CHRISTINE SMOLINSKI]: We colored, we ate. I took her to the bathroom. She was telling me some fun things that, you know, she did with Sean and his girlfriend and his --her daughter. And the next Sunday that I seen her, I tuck her in and she was like, Mommy, I don't want to go back to Daddy Sean. And I said, Why? And she said, I just don't want to. And she was real fidgety. So I was like, Okay, let's talk to Aunt Bubba. She calls my sister Bubba, because she can't say Barbara. So I went in and she said it to my sister
>
> MR. SHAFFER: I'm going to object at this point.
>
> THE COURT: I'm going to allow it
>
> [CHRISTINE SMOLINSKI]: She went into my sister and she told my sister, Aunt Bubba, I want to come home. I don't want to be with Daddy Sean no more. And she started to cry. I was like, Mama, I only have a week left, just hang in there. Mommy's coming to get you.

N.T. 10/7/16, 94-95.

Evidentiary rulings are committed to the sound discretion of the trial court and will not be reversed unless a clear abuse of discretion is demonstrated. Commonwealth v. Foy, 612 A.2d 1349 (Pa. 1992). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will " Commonwealth v. Hess, 745 A.2d 29, 31 (Pa Super. 2000); Foy, supra (Pa. 1992). In addition, the trial court is required to balance the Commonwealth's need for the evidence in question with any prejudice arising therefrom. See Commonwealth v. Jones, 658 A.2d 746, 751 (Pa. 1995) (citing Commonwealth v. Yates, 613 A.2d 542, 543 (Pa. 1992))." Commonwealth v. Montalvo, 986 A.2d 84, 95 (Pa. 2009). Finally, "for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party A party suffers

14

prejudice when the trial court's error could have affected the verdict." Commonwealth v. Tyack, 128 A.3d 254, 257 (Pa.Super. 2015) (citation omitted).

This Court did not err in admitting this evidence because it was admissible under the state of mind exception to the hearsay rule. Pa.R.E. 803(3) provides:

> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

To be admissible under Rule 803(3), proof that the statement in question concerned the declarant's then-existing mental, emotional or physical condition is all that is necessary. The concept undergirding Rule 803(3) is that a statement about the declarant's then-existing state of mind leaves little room for reflection or deliberation, is a verbal part of activity, and, therefore, has a degree of trustworthiness satisfactory to warrant its admission as evidence. It is the spontaneity of the statement and the descriptive aspect of the statement which provide its principal bases for admissibility. See Commonwealth v. Hess, 548 A.2d 582 (Pa. Super. 1988), appeal denied, 563 A.2d 887 (Pa. 1989) ("such statements are said to be reliable because of their spontaneity"). Moreover, there is often no other direct proof where state of mind is at issue. Thus, the necessity of allowing such evidence is recognized as a basis for its admission. See Commonwealth v. Lowenberg, 392 A.2d 1274 (Pa. 1978).

Here, the statement at issue reflected I.H.'s then emotional state and as such it was admissible under Rule 613. It also was relevant because it tended to demonstrate that I.H. was afraid to return to defendant and thus, supported the theory that he was abusing her.

15

Assuming *arguendo* the evidence should not have been introduced, its introduction was harmless in light of the overwhelming evidence of defendant's guilt, which included an admission that he "popped" the victim on more than one occasion. See Commonwealth v Hutchinson, 811 A.2d 556, 561 (Pa. 2002) (harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict). For all of the foregoing reasons, it is suggested that relief be denied with respect to this claim.

In his final claim, defendant argues that this Court committed an abuse of discretion by imposing an "aggregate sentence of ten (10) to twenty (20) years plus seven (7) years probation [because it] was above the guidelines and the court failed to put specific reasons on the record supporting the imposition of an aggravated sentence" Defendant's 1925(b) Statement, Issue 5.

"The proper standard of review when considering whether to affirm a court's sentencing determination is an abuse of discretion. An abuse of discretion is more than a mere error in judgment; thus a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007), citing Commonwealth v Smith, 673 A.2d 893, 895 (Pa. 1996). In imposing a sentence, the court must consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and the rehabilitative needs of the defendant as well as the

16

sentencing guidelines. 42 Pa. C.S. § 9721(b), Walls, 926 A.2d at 963. A court must also consider the Sentencing Guidelines.

Defendant should be denied relief on this issue because the sentence imposed was not above the guidelines and thus, there is no basis for defendant's claim. The applicable sentencing guidelines range for the aggravated assault charge was 90-108 months; plus/minus 12 months, see N.T. 3/23/17, 11, and thus, the sentence was within the guidelines, albeit in the aggravated range. With respect to the charges on which the Court imposed probation, the guidelines called for terms of incarceration, not probation so those sentences were below the range of sentences recommended by the sentencing guidelines.

Next, although the law requires a sentencing court to set forth reasons for exceeding the recommended Sentencing Guidelines ranges, Commonwealth v. Johnson, 666 A.2d 690 (Pa Super. 1995), to obtain relief a defendant must demonstrate that a sentence is unreasonable. Commonwealth v. Brown, 587 A.2d 6 (Pa. Super. 1991); Commonwealth v. Gibson, 716 A.2d 1275 (Pa. Super. 1998). Defendant cannot establish that the sentence was unreasonable given the injuries suffered by the two-year old victim, injuries which evidenced that defendant intentionally abused her on several occasions. As this Court stated just prior to imposing sentence, it was a horrible case, with no explanation and no excuse for the infliction of those injuries. (N.T/3/2317, 12.

Accordingly, for the reasons stated, this Court suggests that no relief be granted with respect to this claim.

17

## CONCLUSION

For the foregoing reasons, the judgment of sentence imposed in this matter should be affirmed.

By the Court,

DATE: 10/25/17

Honorable Jeffrey P. Minehart

18